UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| TRACY D.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:23-cv-00037-SEB-KMB |
| | ) |
| MARTIN J. O'MALLEY,[2] | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION ON COMPLAINT FOR JUDICIAL REVIEW**

Plaintiff Tracy D. applied for disability insurance benefits and supplemental security income from the Social Security Administration ("SSA") on June 15, 2021, alleging an onset date of September 10, 2020. [Dkt. 8-3 at 2.] Administrative Law Judge Candace A. McDaniel (the "ALJ") conducted a hearing on June 16, 2022. [Dkt. 8-2 at 35-70.] The ALJ issued a decision on July 6, 2022, concluding that Tracy was not entitled to receive disability insurance benefits or supplemental security income. [*Id.* at 16-28.] The Appeals Council denied Tracy's request for review on January 9, 2023. [*Id.* at 2-7.] This matter was referred to the Magistrate Judge under 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b) for a Report and Recommendation as to the appropriate disposition of the pending motion.

---

[1] To protect the privacy interests of claimants for Social Security benefits, and consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first names and last initials of non-governmental parties in its Social Security judicial review opinions.

[2] Pursuant to Federal Rule of Civil Procedure 25(d), Martin J. O'Malley automatically became the Defendant in this case when he was sworn in as Commissioner of the Social Security Administration on December 20, 2023, replacing Acting Commissioner of the Social Security Administration Kilolo Kijakazi.

## I. STANDARD OF REVIEW

"The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019). Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Stephens*, 888 F.3d at 327. "[S]ubstantial evidence" is "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327. Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). "[E]ven under deferential standard of review for social security disability cases, an [ALJ] must provide a logical bridge between the evidence and [the] conclusions." *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022) (internal quotations omitted).

The SSA applies a five-step evaluation to determine whether the claimant is disabled. *Stephens*, 888 F.3d at 327 (citing 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)). The ALJ must evaluate the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citations omitted). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id*. The ALJ uses the RFC at Step Four to determine whether the claimant can perform his own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (v).

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Stephens*, 888 F.3d at 327. When an ALJ's decision does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). Typically, a remand is also appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

## II.  RELEVANT BACKGROUND

### A.  Relevant Procedural Background

Tracy was 46 years old when she applied for disability benefits.  [Dkt. 8-3 at 2.]  She graduated from high school and previously worked as a cashier, a residential cleaner, a factory worker, a metal shop worker, and a pawnbroker.  [Dkt. 8-2 at 40-49.]

The ALJ followed the five-step evaluation set forth by SSA in 20 C.F.R. § 404.1520(a)(4) and concluded that Tracy was not disabled.  Specifically, the ALJ found as follows:

- At Step One, Tracy had not engaged in substantial gainful activity since the alleged onset date of September 10, 2020.  [*Id.* at 19.]

- At Step Two, Tracy had the following severe impairment: chronic venous insufficiency.  [*Id.* at 19.]

- At Step Three, Tracy did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  [*Id.* at 19-20.]

- After Step Three but before Step Four, Tracy had the RFC "to perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a) except the claimant can occasionally stoop, crouch, kneel and climb ramps and stairs, but can never crawl or climb ladders, ropes and scaffolds.  The claimant cannot ambulate on uneven terrain or wet and slick surfaces.  The claimant can only occasionally use her right and left feet for foot pedal operation."  [*Id.* at 20.]

- At Step Four, relying on the testimony of the vocational expert ("VE") and considering Tracy's RFC, Tracy was unable to perform any past relevant work.  [*Id.* at 27.]

- Proceeding to Step Five, relying on VE testimony and considering Tracy's age, education, and RFC, there were jobs that existed in significant numbers in the national economy that Tracy could have performed through the date of the decision, including table worker, cuff folder, and lens inserter.  [*Id.* at 27-28.]

### B.  Relevant Medical Background

On January 29, 2021, Tracy underwent a procedure to remove varicose veins in her left leg.  [Dkt. 8-7 at 22-23.]  Ten days later, she went to the emergency room complaining of pain, swelling, and tingling in her left leg and foot.  [Dkt. 8-7 at 37-54.]

On June 2, 2021, Tracy had an appointment with her primary care physician, Dr. Joseph Beaven, and complained of "pain and tenderness in the left calf." [*Id.* at 77.] Tracy had several more appointments with Dr. Beaven over the next few months and reported worsening pain and swelling that was aggravated by standing or walking. [Dkt. 8-8 at 80-87, 106-14.]

On September 30, 2021, a neurologist diagnosed Tracy with chronic regional pain syndrome ("CRPS") and referred her for physical therapy and pain management for possible nerve blocks. [*Id.* at 130-48] Tracy had weekly physical therapy appointments from October 12, 2021, to December 13, 2021. [Dkt. 8-8 at 2-42, 67-112.] She reported 45% pain relief after receiving a nerve block on December 3, 2021. [Dkt. 8-8 at 124.] On December 15, 2021, the pain management doctor opined that Tracy "has failed more than 6 months of conservative therapy" and that she would be a "good candidate for [spinal cord stimulation] trial."[3] [*Id.* at 128.]

### C. Medical Opinions

In September 2021, consultative examiner Dr. Bart Goldman examined Tracy and opined that "[a]ssuming this examination is an accurate representation of her actual abilities, it is unlikely that she will be able to ambulate for 2 hours out of an 8 hour day, carry less than 10 pounds frequently and/or carry more than 10 pounds on an occasional basis." [Dkt. 8-7 at 95-104.]

In March 2022, treating physician Dr. Beaven opined that Tracy would likely be off task 25% of the time and would likely miss work due to her medical conditions 30 days per month, that she could sit for about 30 minutes at a time and for less than 2 hours in a workday, and that she

---

[3] A spinal cord stimulator is a surgically implanted device "that delivers a low-voltage electrical current to the spinal cord to block the sensation of pain. This technique is best suited for pain that is neuropathic in nature," and may be used to treat chronic pain resulting from CRPS. *See* Spinal Cord Stimulation for Chronic Pain, *available at* https://www.cms.gov/medicare-coverage-database/view/lcd.aspx?lcdid=36035&ver=27& (last visited January 14, 2024).

could stand for about 15 minutes at a time and for less than 30 minutes in a workday.  [Dkt. 8-8 at 209-12.]

State agency consultants Dr. Richard Wenzler and Dr. Joshua Eskonen opined that Tracy could "[s]tand and/or walk (with normal breaks) for a total of: 2 hours" and "[s]it (with normal breaks) for a total of: About 6 hours in an 8 hour workday." [*Id.* at 5, 23.]

In conducting the RFC analysis, the ALJ found that Dr. Goldman's opinion and Dr. Beaven's opinion were unpersuasive because they were supported by objective medical evidence and explanations but inconsistent with the medical record. [Dkt. 8-2 at 26.]  Instead, she found that Dr. Wenzler's opinion and Dr. Eskonen's opinion were persuasive because they were both supported by objective medical evidence and explanations and consistent with the medical record, and she relied on their opinions in formulating Tracy's RFC. [*Id.* at 24, 26.]

### III. DISCUSSION

Tracy claims that the ALJ erred in three ways: (1) by crediting the opinions of Dr. Wenzler and Dr. Eskonen over the opinions of Dr. Goldman and Dr. Beaven; (2) by concluding that Tracy's CRPS did not meet the durational requirements of 20 C.F.R. §§ 404.1509 and 416.909; and (3) by fundamentally misunderstanding the nature of CRPS.  The Court will address the issues as necessary to resolve the appeal, beginning with the first issue because the Court finds it to be dispositive.

#### A.  Medical Opinions

In determining the weight to give a medical source opinion or prior administrative finding, the ALJ must consider a number of factors, including: (1) whether the opinion is supported by objective medical evidence and explanations; (2) whether the opinion is consistent with evidence from other medical and nonmedical sources; (3) the treatment relationship between the claimant

and the person giving the opinion; (4) the specialization of the person giving the opinion; and (5) any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1520c(c). The first two factors—supportability and consistency—are the most important. 20 C.F.R. § 404.1520c(b)(2). But when "two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ "will articulate how [she] considered the other most persuasive factors in paragraphs (c)(3) through (c)(5)." 20 C.F.R. § 404.1520c(b)(3).

Four physicians offered medical opinions about the limiting effects of Tracy's medical conditions: Dr. Goldman (a consultative examiner for the Agency), Dr. Beaven (Tracy's treating physician), Dr. Wenzler (a non-examining state agency physician), and Dr. Eskonen (a second non-examining state agency physician). Dr. Goldman and Dr. Beaven opined that Tracy's medical conditions would have greater limiting effects on her ability to work than Dr. Wenzler and Dr. Eskonen. The ALJ found that all four medical opinions were supported by the record but that only the opinions of Dr. Wenzler and Dr. Eskonen were consistent with the record. Because she found that Dr. Goldman's opinion and Dr. Beaven's opinion were inconsistent with the record, she found their opinions unpersuasive, and instead relied on the less-restrictive opinions of Dr. Wenzler and Dr. Eskonen in assessing Tracy's RFC.

Tracy argues that the ALJ made legal errors in discrediting the opinions of Dr. Goldman and Dr. Beaven, and that these errors require reversal even if the ALJ's decision is otherwise supported by substantial evidence. [Dkt. 14 at 13-14.]

### 1. Dr. Goldman

Tracy argues that while "the ALJ was not required to credit Dr. Goldman's opinion, she was required to provide a 'good explanation' for rejecting it—which she failed to do." [Dkt. 11 at

7

22.]  This is because, Tracy argues, "it is unlikely that Agency examiners would 'exaggerate an applicant's disability' given their employment relationship."  [Dkt. 11 at 22 (quoting *Garcia v. Colvin*, 741 F.3d 758, 761 (7th Cir. 2013)).]  According to Tracy, the ALJ's reason for discrediting Dr. Goldman's opinion—that Dr. Goldman examined Tracy before her condition improved in response to physical therapy and pain management—is insufficient.  Despite some improvement, Tracy's "pain management specialist noted that she had failed all treatment modalities and wanted to [try] a spinal cord stimulator."  [Dkt. 11 at 22 (emphasis removed).]

In response, the Commissioner argues that the ALJ provided an adequate explanation for discrediting Dr. Goldman's opinion:  "Dr. Goldman's opinion regarding walking and carrying was not supported by Dr. Goldman's own findings on exam and was not consistent with substantial record evidence," such as Dr. Goldman's finding "normal muscle tone throughout and full strength in Plaintiff's arms and right leg."  [Dkt. 13 at 13.]  The Commissioner also argues that Dr. Goldman saw Tracy before she received physical therapy and nerve blocks, which resulted in significant improvement of her condition.  [*Id.* at 14.]

In reply, Tracy argues that, while the ALJ was not required to give Dr. Goldman's opinion controlling weight, the Seventh Circuit has found that an ALJ's decision to discredit the agency's own doctors is "unusual" and "can be expected to cause a reviewing court to take notice and await a good explanation."  [Dkt. 14 at 12 (quoting *Jones v. Saul*, 823 F. App'x 434, 439 (7th Cir. 2020)).]  In this case, Tracy argues, her minor improvements fail to establish that she was capable of work given that her treatment notes describe significant ongoing limitations that impacted her ability to engage in daily activities.  [Dkt. 14 at 11.]

In this case, the ALJ discredited Dr. Goldman's opinion because "his onetime examination of the claimant occurred prior to her receiving therapy and injections, which helped improve her

8

symptoms and functional capacity." [Dkt. 8-2 at 26.]  This reasoning is at odds with previous holdings from the Seventh Circuit, which explain that improvement in a claimant's condition does not necessarily prove that she is capable of performing full-time work.  For example, in *Murphy v. Colvin*, the claimant alleged that she had disabling neurological limitations following a stroke. 759 F.3d 811, 813 (7th Cir. 2014).  The ALJ denied her disability claim because the treating neurologist's notes characterized her as medically improving and neurologically stable. *Id.* at 819. In holding that the ALJ's opinion was not supported by substantial evidence, the court reasoned:

> The key is not whether one has improved (although that is important), but whether they have improved enough to meet the legal criteria of not being classified as disabled.  Although the ALJ stated the medical notes showed Murphy's health consistently improved the twelve months after her stroke, there is no evidence to suggest that she had improved to the point where she could perform light work. Simply because one is characterized as "stable" or "improving" does not necessarily mean that she is capable of doing light work.  The ALJ noted that Murphy still suffered from considerable limitations as a result of the stroke.  For example, Murphy experienced difficulty knowing where her right hand was spatially located without looking at it in April 2008 and she still had issues related to her speech. *Id.*

*Id.*; *see also Jarnutowski*, 48 F.4th at 775 ("The ALJ failed to explain how the evidence showed that Jarnutowski improved enough after her foot surgery to lift and carry twice as much weight as before her surgery.").

Here, the ALJ found that Tracy's medical records showed that her condition improved with physical therapy and nerve block injections and concluded that these improvements were inconsistent with Dr. Goldman's opinion about the limiting effects of Tracy's medical conditions. But the ALJ did not acknowledge that at the conclusion of Tracy's course of physical therapy, her therapist noted that she "continues to demonstrate impairments in all of [the] areas [where she showed improvement]," including "carrying objects, lifting, sleeping, walking, pulling, pushing, uncomfortable of pain, moving in bed, sitting, standing, stooping, reaching behind back, reaching

9

overhead and unable to perform repetitive tasks." [Dkt. 8-8 at 74-75.] Nor did the ALJ acknowledge the opinion of Tracy's pain specialist that Tracy had "failed more than 6 months of conservative therapy" and that she would be a "good candidate for [spinal cord stimulation] trial." [*Id.* at 128.]; *see Jarnutowski*, 48 F.4th at 774 ("In making a proper RFC determination, the ALJ must consider all of the relevant evidence in the record . . . and may not dismiss a line of evidence contrary to the ruling."). Thus, the improvement recorded in Tracy's treatment notes in December 2021, without more, does not show that Dr. Goldman's medical opinion was inconsistent with the medical record, and the ALJ's contrary finding was a legal error.[4]

### 2. Dr. Beaven

Tracy argues that the ALJ erred in discrediting Dr. Beaven's opinion by "cherry-pick[ing] normal findings despite ample abnormal ones" and "play[ing] doctor" by trying to interpret the significance of various treatment notes herself, rather than relying on an expert medical opinion. [Dkt. 11 at 16, 17.] Specifically, Tracy argues that it was improper for the ALJ to "conclude[] that the absence of tenderness with range of motion on gait" was inconsistent with Dr. Beaven's opinion that Tracy was unable to stand and/or walk for 2 hours out of an 8-hour workday. [*Id.* at 17.] She also argues that it was improper for the ALJ to discredit Dr. Beaven's opinion about Tracy's ability to sit, stand, and walk for prolonged periods during the workday based on certain behavioral

---

[4] The Commissioner argues that the ALJ also found that Dr. Goldman's opinion "was not supported by Dr. Goldman's own findings on exam and was not consistent with substantial record evidence" such as Dr. Goldman's finding that that Tracy had normal muscle tone and full strength in her arms and right leg. [Dkt. 14 at 13.] However, in the section of her opinion explaining why she found Dr. Goldman's opinion unpersuasive, the only reason the ALJ provided was that Tracy's condition had improved since Dr. Goldman's one-time examination. [Dkt. 8-2 at 26.] The Court declines to consider whether the Commissioner's *post hoc* rationale could have justified the ALJ's decision to discredit Dr. Goldman's medical opinion. *See Smith v. Astrue*, 467 F. App'x 507, 510-11 (7th Cir. 2012) (rejecting the Commissioner's "post hoc rationalization" of the ALJ's RFC analysis because "'what matters are the reasons articulated *by the ALJ*,' not the rationale advanced by the government on appeal") (emphasis in original) (quoting *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011)).

observations during her November 2021 medical exam (*e.g.*, the fact that Tracy was pleasant, alert, and in no acute distress). [Dkt. 11 at 16.] For similar reasons, Tracy argues that it was improper for the ALJ to speculate about the significance of Dr. Beaven's failure to prescribe a cane or walker. [Dkt. 11 at 18-20.]

In response, the Commissioner argues that Dr. Beaven's opinion was not entitled to controlling weight because Tracy filed her disability claim after March 20, 2017. [*Id.* at 11-12 (noting a revision to the SSA's administrative regulations).] Under the current regulation, a physician's "'relationship with the claimant . . . may help' in assessing an opinion's persuasiveness." [Dkt. 13 at 12 (quoting 20 C.F.R. § 404.1520c(c)(3)(i)-(v)).] But the "most important factors" that an ALJ considers are a medical opinion's "supportability" and "consistency" with the evidence in the record. [Dkt. 13 at 11-12 (quoting 20 C.F.R. § 404.1520c(a)).] In this case, the Commissioner argues, the ALJ reasonably found that Dr. Beaven's opinion was inconsistent with the medical evidence and his own treatment records for the reasons the ALJ set forth in her opinion. [*Id.* at 12.]

In reply, Tracy argues that the ALJ's focus on Dr. Beaven's failure to prescribe a cane or walker was improper given that a cane does not require a prescription. [Dkt. 14 at 10 (citing *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010)).]

The ALJ reasoned that Dr. Beaven's opinions were "supported but are inconsistent with the record." [Dkt. 8-2 at 26.] The ALJ specifically took issue with Dr. Beaven's notes from an appointment in November 2021, in which Dr. Beaven noted that Tracy was "pleasant, alert and in no acute distress" during the appointment and that she "ha[d] no tenderness with range of motion on gait bilaterally." [*Id.*] The ALJ also reasoned that Dr. Beaven's opinion is inconsistent with his failure to prescribe a cane or walker and concluded that if Tracy's "gait was so deleteriously

11

affected by her condition that she could not even stand or walk for up to two hours, it would likely require the use of a cane or walker for support and to mitigate pain with ambulation." [*Id.*]

The ALJ's reasoning is flawed in three respects. First, the fact that Tracy may have been "pleasant, alert, and in no acute distress" during her November 2021 appointment is not inconsistent with Dr. Beaven's opinion with respect to Tracy's ability to sit, stand, or walk for prolonged periods. Not every patient with a severely limiting medical impairment will be unpleasant to her physician or distracted during a brief medical exam. In *Mandrell v. Kijakazi*, the Seventh Circuit Court of Appeals held that the ALJ had improperly played doctor by deducing that a claimant's post-traumatic stress disorder was not too severe given her psychiatrist's note that she was cooperative, calm, and oriented, and that she displayed a euthymic mood and a "stable and congruent" affect during an office visit. 25 F.4th 514, 519 (7th Cir. 2022) ("the fact that Mandrell was able to make it through one psychiatrist's appointment with a calm affect says nothing. She may well have found that to be a safe environment, unlike the world at large or a workplace"). As in *Mandrell*, the fact that Tracy was pleasant, alert, and in no acute distress during a brief medical appointment is not inconsistent with Dr. Beaven's opinion about the limiting effects of her chronic conditions.

Second, the ALJ's interpretation of Dr. Beaven's note that Tracy had "no tenderness with range of motion on gait bilaterally" improperly cherry-picked a positive phrase from a treatment record that was overall pessimistic about Tracy's condition. [Dkt. 8-7 at 112 ("Patient presents with complaint of worsening pain of the left lower extremity, with numbness, tingling, and burning. Patient has received epidural block without relief. Patient states that the skin has become sensitive and severely to the touch.").] Further, as a layperson, the ALJ was not qualified to determine that having "no tenderness with range of motion on gait bilaterally" was inconsistent

12

with Dr. Beaven's opinion about the limiting effects of Tracy's medical impairments, such as her ability to sit, stand, and walk for prolonged periods. *See Hopgood ex rel L.G. v. Astrue*, 578 F.3d 696, 702 (7th Cir. 2009) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.").

Third, as the Seventh Circuit Court of Appeals has previously explained, assistive devices such as canes and walkers do not require a prescription, so it should not have struck the ALJ as inconsistent that such a prescription was absent from Dr. Beaven's medical notes. *Cf. Parker*, 597 F.3d at 922 ("Absurdly, the administrative law judge thought it suspicious that the plaintiff uses a cane, when no physician had prescribed a cane. A cane does not require a prescription; it had been suggested to the plaintiff by an occupational therapist."). Thus, the ALJ should not have relied on her own lay speculation about the appropriate course of treatment for Tracy's condition in finding that Dr. Beaven's treatment plan was inconsistent with his assessment of Tracy's condition. *See Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) (warning that an ALJ's "lay intuitions about medical phenomena are often wrong"). Also, Tracy testified at the disability hearing that her physical therapist had suggested she purchase a walker, and her treatment notes from her physical therapist in October 2021 indicate that Tracy used a cane at home as needed. [*Id.* at 55-56; dkt. 8-8 at 20 ("Pt reports that at 3 am this morning she woke up in pain and was unable to walk and had to use her cane to ambulate throughout her house").]

For these reasons, the ALJ's determination that Dr. Beaven's medical opinion was inconsistent with the medical record rested on legal errors. The fact that Dr. Beaven noted that Tracy was pleasant during a November 2021 appointment, that he did not prescribe a cane, and that he determined she "ha[d] no tenderness with range of motion on gait bilaterally" is not

inconsistent with the disability assessment he completed in March 2022, and the ALJ erred by relying on these "inconsistencies" in discrediting Dr. Beaven's medical opinion.

### 3. Dr. Wenzler and Dr. Eskonen

Tracy argues that there were "significant factors undermining the persuasiveness of [Dr. Wenzler's and Dr. Eskonen's] opinions, and that the ALJ was not entitled to rely on them." [Dkt. 11 at 24.]  In response, the Commissioner argues that Tracy merely disagrees with the ALJ's decision to credit the opinions of Dr. Wenzler and Dr. Eskonen and that there was no error in the ALJ's reliance on their opinions. [Dkt. 13 at 14.]  The Commissioner relies on *Baptist v. Kijakazi*, 74 F.4th 437 (7th Cir. 2023), for the proposition that the ALJ may rely on the medical opinions of non-examining physicians, even when those opinions conflict with the medical opinions of the claimant's treating physician. [*Id.*]

*Baptist* is distinguishable from the facts of this case.  In *Baptist*, the claimant alleged that she was disabled due to headaches and neck and shoulder pain after a car accident. *Id.* at 439.  Her treating physicians predicted that her condition would improve with conservative treatment. *Id.* Her primary care physician, however, thought that she might be malingering and suspected that she exaggerated her symptoms during exams, noting there was "no objective evidence" that there was anything wrong with her and that it was "obvious" to him that she was not giving full effort during strength tests. *Id.* at 439-40.  Still, the treating physician in that case completed a disability assessment based solely on the claimant's subjective description of her symptoms and opined that her complaint was "plausible" and that there was "no doubt" that she was unable to work. *Id.* at 439. A nurse practitioner also assessed the claimant's capacity to work and her opinion was plainly inconsistent, as evidenced by her completion of two very different disability assessments for the claimant on the same day. *Id.* at 440.  The Seventh Circuit held that in addition to these internal

inconsistencies, the treating physician's opinion and the nurse practitioner's opinion were "irreconcilable with the conservative treatment [the treating physician] and other treating providers prescribed." *Id.* at 445.

Unlike in *Baptist*, in Tracy's case there are no allegations or suspicions in the medical records that Tracy was malingering or failed to give full effort during physical exams. She had objective and readily apparent symptoms, such as chronic swelling, bruising, discoloration, and bulging veins. [*See, e.g.*, dkt. 8-7 at 14-17, 25-54, 95-104.] Her physicians did not limit her to conservative treatments; instead, her treatment plan escalated as the months wore on and her condition failed to resolve. Tracy was prescribed Tylenol, Cymbalta, Neurontin, Norco, Toradol, Lyrica, topical Lidocaine, and topical Ketamine to help manage her pain. [Dkt. 8-8 at 125, 128.] She had weekly physical therapy appointments. [*Id.* at 80-87, 106-14.] She received nerve block injections from a pain specialist. And when all of these treatments "failed," her pain management doctor recommended that she would be a good candidate for a surgically implanted spinal cord stimulator. [*Id.* at 128.]

*Baptist* holds that an ALJ may credit the medical opinion of a non-examining state agency physician over the medical opinion of the claimant's treating physician when the treating physician's medical opinion is inconsistent with the medical record. But as explained in the previous section of this Order, in this case the ALJ's inconsistency determination with respect to Dr. Beaven rested on legal errors. The Social Security regulation that governs how ALJ's are to evaluate medical opinions provides that when there are conflicting medical opinions, all of which are equally supported and consistent with the record, the ALJ will consider additional factors, such as the physician's "[r]elationship with the claimant," the physician's "[s]pecialization," and "[o]ther factors," such as the physician's "familiarity with other evidence in the claim or an understanding

15

of our disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(b)(3), (c)(3) to (5). Here, the ALJ did not consider any additional factors; her decision to credit the opinions of Dr. Wenzler and Dr. Eskonen over the opinion of Dr. Beaven and Dr. Goldman rested entirely on legally incorrect inconsistency determinations. Thus, the ALJ did not articulate a proper basis for crediting the less restrictive medical opinions of Dr. Wenzler and Dr. Eskonen over the medical opinions of Dr. Beaven and Dr. Goldman, and it was error for her to rely on their opinions in determining Tracy's RFC.

### 4. Summary of the ALJ's Medical Opinion Assessment

In conducting the RFC analysis, the ALJ relied on the medical opinions of two non-examining state agency physicians and discredited the medical opinions of Tracy's treating physician and the Agency's own consultative examiner. That reliance was based solely on the ALJ's determination that the opinions of the treating physician and the consultative examiner were inconsistent with the record. 20 C.F.R. § 404.1520c(c)(2). But it is apparent from the Court's review that the ALJ's inconsistency determinations are based on legal errors. These errors significantly impacted the ALJ's RFC analysis because Tracy's treating physician and the Agency's consultative examiner placed greater limitations on her ability to work than did the non-examining state agency physicians. For this reason, the undersigned recommends that the District Judge reverse the Commissioner's decision denying benefits and remand this matter for further proceedings pursuant to 42 U.S.C. § 405(g).

### B. Other issues

Because the undersigned finds remand to be necessary on the grounds set forth above, she will not address Tracy's other arguments in depth. Tracy may raise her other concerns on remand if she deems it appropriate to do so.

## IV. CONCLUSION

For the reasons stated above, the Magistrate Judge recommends that the District Judge **REVERSE** the Commissioner's decision denying Tracy D. benefits and **REMAND** this matter for further proceedings pursuant to 42 U.S.C. § 405(g) (sentence 4).  Any objections to this Report and Recommendation must be filed in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b).  The failure to file objections **within 14 days** after service will constitute a waiver of subsequent review absent a showing of good cause for that failure.  Counsel should not anticipate any extension of this deadline or any other related briefing deadlines.

**SO ORDERED**.

Date: 1/17/2024

Kellie M. Barr
United States Magistrate Judge
Southern District of Indiana


Distribution:

Lu Han
Social Security Administration
lu.han@ssa.gov

Julian Clifford Wierenga
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
julian.wierenga@usdoj.gov

Adriana Maria de la Torre
Tower Law Group
adriana@towerlawgroup.com